UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OCTOBER 8, 2015

UNITED STATES OF AMERICA,
RESPONDENT.

DOCKET NO: 89-CR-346(LAP)

v.

GEORGE RIVERA,
PETITIONER.

MOTION FOR MODIFICATION
OR REDUCTION OF SENTENCE
PURSUANT to 18 U.S.C. 3582(c)(2)
Guideline Amendment 782

RECEIVED
SDNY PRO SE OFFICE
2015 OCT 14 AM 10: 33

Comes now, George Rivera (Hereinafter peti-
tioner) in Pro-se, who respectfully submits
this Sentencing Memorandum in support
of his request for a Sentence reduction
Consistent with the Sentencing Commis-
sion Amendment and its retroactive
application of Amendment 782.

In support thereof, petitioner
avers as follows: Petitioner was
arrested in May 1989 following an
investigation into a narcotics trafficking
operation. Petitioner was charged in
a June 1990 Superseding indictment
in a total of 14 Counts. Count one
charged petitioner with Conspiracy

to distribute and possess with intent to distribute more than one kilogram of heroin, in violation of title 21, U.S.C § 846.

Count Two charged petitioner with operating a Continuing Criminal Enterprise, in violation of title 21, U.S.C § 848 (a) and (b). Counts three through nine charged petitioner with substantive heroin distribution violations, in violation of title 21, U.S.C § 841 (a) (1).

Counts ten through thirteen charged petitioner with using and carrying eleven separate firearms during and in relation to drug trafficking crimes, in violation of title 18, U.S.C § 924 (c). Finally, Count fourteen charged petitioner with attempted income tax evasion, in violation of title 26, U.S.C § 7201, for failing to report income for the tax year 1988. Trial against Petitioner commenced on August 27, 1990 and concluded on November 16, 1990, when the jury convicted petitioner on Count one (narcotics conspiracy) and Count fourteen (tax evasion). The jury was unable to reach a verdict as to petitioner on the remaining counts of

the indictment. The pre-sentence
Investigation Report (PSI) prepared
by the probation office computed
a total offense level under the
United States Sentencing Guidelines
(Sentencing guidelines) of 44. The report,
applying U.S.S.G. § 2D1.1 calculated a
base offense level of 36, and
applied a two level increase for
the Multiple fire arms used in the
Commission of the offense, pur-
suant to U.S.S.G. § 2D1.1(b)(1). See
PSI at pp 92-94. The probation office
also recommended sentence adjust-
ments from chapter three of
the Sentencing guidelines, adding
a four-level increase for a leadership
role in the organization, pursuant to
U.S.S.G. § 3B1.1(a), and a two-level
increase pursuant to U.S.S.G. § 3C1.1.
See PSI at p.p. 95-97. On April
24, 1991, the Court adopted the
recommendations of the PSI
and sentenced petitioner to a
term of life imprisonment on
Count one and a five year term
of imprisonment on Count fourteen,
to be served Concurrently, and a
term of five years supervised

3 of 8

release. The court also imposed a $25,000 fine and Mandatory special assessments totaling $100. Petitioner appealed his Convictions to the 2nd Circuit Court of Appeals. In a published opinion issued on July 30, 1992, the appellate Court affirmed petitioner's Convictions. See U.S. v. Rivera, 971 F.2d 876 (2nd Cir. 1992).

It is well settled that pro-se litigants generally are entitled to liberal Construction of their pleadings, which should be read to raise the strongest arguments that they Suggest. See, Harris v. Mills, 572 F.3d 66, 72 (2nd cir. 2009) see Haines v. Kerner, 404 U.S. 519, 520-521 (1972).

Petitioner Contends, with the protections afforded in Haines v. Kerner, and based on the weight estimates as established in the PSI, that petitioner is entitled to relief pursuant to Amendment 782 and its retroactive application. See Statement § 1B1.10 (Reduction in term of Imprisonment).

Amendment 782 reduced by two levels the offense levels assigned to the quantities that trigger the statutory mandatory minimum penalties in §2D1.1 and made parallel changes to §2D1.11.

In a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual, the Court may reduce a defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2). See Dillon v. U.S., 560 U.S. 817 (2010).

The Court in determining whether, and to what extent, a reduction in a defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement is warranted, the Court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guideline listed in Subsection (d) had been in effect at the time the defendant was sentenced. see

Pepper v. U.S., 131 S.ct. 1229 (2011);
Rita v. U.S., 551 U.S. 338 (2007); Freeman v.
U.S., 131 S.ct. 2685 (2011).
        The district Court when applying
amendment 782 must consider:
1) the factors set forth in 18 U.S.C. §
3553(a) in determining (I) whether
a reduction in the defendants term
of imprisonment is warranted and
(II) the extent of such reduction,
2) the Court shall consider the
nature and seriousness of danger
to any person or the community
that may be posed by a reduction
in the defendant's term of imprison-
ment in determining: (I) whether
such a reduction is warranted and
(II) the extent of such reduction,
and 3) the Court may consider
post-sentencing conduct (rehabilitation)
of the defendant.   Petitioner
contends he is eligible for a
sentence reduction under amend-
ment 782. The new guideline
range clearly affects the sen-
tence imposed by the district
Court, and has the effect of
significantly lowering petitioner's
sentence.

Petitioner contends that the new base offense level after applying amendment 782 would be 34. Taking into account all other sentencing adjustments added to petitioner's offense level, petitioner would now have a total offense level of 42, which under category (0-I) would place petitioner in the 360-life range. petitioner has been incarcerated since 1989, when petitioner was just 21 years old.

During petitioner's 26 years of incarceration, petitioner has amassed a vast collection of certificates of completion for Adult continual Education programs. petitioner has received his GED diploma and college acredited programs. In a nutshell, petition-er has used this time productively as best possible, albeit a few set backs. Petitioner now nevertheless, respectfully asks this Honorable court to modify petitioner's sentence and

re-sentence petitioner pursuant
to the retroactive application
of amendment 782.

Respectfully Submitted,

GEORGE RIVERA
REG. NO. 16231-054
U.S.P. Lewisburg
P.O. Box 1000
Lewisburg, PA. 17837

George Rivera
DATED: OCTOBER 8, 2015

8 of 8

# CERTIFICATE of SERVICE

I, GEORGE Rivera, the named petitioner herein these papers, declare under the penalties of perjury that on October 8th, 2015 I handed to my Case Manager in U.S.P. Lewisburg, Ms. M. Fleet, an eight page motion requesting a modification of sentence pursuant to 3582(c)(2), addressed to:

United States District Court
Southern District of New York
500 Pearl Street
New York, N.Y. 10007-1312
PRO-se Clerk

for mailing,

George Rivera
October 8th, 2015.

GEORGE RIVERA
16231-054
U.S.P Lewisburg
P.O. BOX 1000
Lewisburg, PA. 17837

Re: 89-CR-346 (LAP)

U.S. District Court
Southern District of New York

PRO-Se Clerk:

Sir/maam,    Would you be kind
enough to provide me with a copy
stamped dated and received of
the enclosed motion and certificate
of service.    Thank you.

George Rivera
October, 8th, 2015.

83499-P. Richter
(N)

IN UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA )
)
vs. )
)
GEORGE RIVERA )
)

Prepared For:
HONORABLE SHIRLEY WOHL KRAM
Docket No.   U.S. District Judge
89 CR 346 (S6)-01 (SWK)

Sentence Date: 3/13/91

---

### PRESENTENCE REPORT

**Offense:**    CT. 1:  NARCOTICS CONSPIRACY (21 USC 846)-Class A Felony
CT. 14: ATTEMPTED TAX EVASION (26 USC 7201)-Class D
Felony

**Plea/Verdict:**   Found guilty on Counts 1 and 14 by jury verdict on
November 16, 1990 before the Honorable Shirley Wohl
Kram.

**Mandatory Minimum:** Count 1 - 10 years

**Date of Arrest:**   May 1, 1989

**Release Status:**   Remanded since arrest.

**Identifying Data:**

| | | | |
|---|---|---|---|
| Date of Birth: | 1/10/68 | Age: | 23 |
| Race: | White Hispanic | S.S.# : | 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 |
| Sex: | Male | FBI # : | 608794CA5 |
| Marital Status: | Single | NYSID#: | 5176602J |
| Education: | 10th grade | USM # : | 16231-054 |
| Dependents: | 2 | Other ID#: | |
| Address: | 1665 Morris Avenue #3B Bronx, NY  10456 | Citizenship: | U.S. Native |

**Detainers:**    Mt. Vernon City Court - Bench Warrant issued
October 7, 1986 Dkt. #86-2142.

**Codefendants:**   See Offense Section

**Assistant U.S. Attorney**         **Defense Counsel**

Henry DePippo                Robert Simels   (Retained)
791-1929                 260 Madison Avenue
993-1940                 New York, NY  10016
(212) 679-8700

RECEIVED
MAY 0 1 [illegible]
COMMUNITY CORRECTIONS
NEW YORK, NEW YORK

Prepared By: PENNY RICHTER
U.S. Probation Officer
(212) 791-0232
Office Location: New York City

Revised:  March 5, 1991

 

RIVERA, GEORGE

-2-                                      83499-P. Richter


# PART A.    THE OFFENSE

### Charge(s) and Conviction(s)

1.  <u>Count 1</u> of 20 count indictment SS 89 CR 346(SWK), filed in the Southern District of New York, charges from April 1987 up to the date of the filing of this indictment, October 3, 1989, George Rivera, a/k/a "Boy George", Ward Johnson, a/k/a "Six O", Walter David Cook, a/k/a "Ice", Matthew Williams, a/k/a "Matt", Luis Gautier, a/k/a "Weasel", Ralph Hernandez, Jaime Cuevas, a/k/a "Papa Bear", Jonathan Lane Morris, Jr., a/k/a "Gucci", Danny Delgado, Anthony Rivera, Victor Briggs, Anthony Briggs, Willie Claussen, Kenroy Prentice, Bob Lemon, Michael Cole, Marshall Harrison, a/k/a "Washington", Dennis Lynch, Elizabeth Velasquez, Albert Delmoral, a/k/a "Tito", Arycelis Turino, a/k/a "Chela", Desiree Sidberry, Ketty Turino, Andrew Simmons, Ruben Rodriguez, John Marrero, Raymond Marrero, a/k/a "Red", Vicki Dowdy, Madeline Rodriguez, a/k/a "Smiley", Mark Sanchez, Edgardo Delmoral, a/k/a "Gardy", Anthony Garay, and Veronica Aviles, conspired together to violate the narcotic laws of the United States in violation of 21 USC 846.

2.  <u>Count 2</u> charges from April 1987 up to the date of the filing of this indictment, October 3, 1989, George Rivera did engage in a continuing criminal activity in that he violated narcotic laws in concert with at least five other persons with respect to whom he occupied the position of organizer, supervisor and manager and from which continuing series of violations he obtained substantial income and resources that are subject to forfeiture in violation of 21 USC 848(a).

3.  <u>Count 3</u> charges on August 27, 1987, George Rivera did distribute approximately 56 grams of heroin in violation of 21 USC 812, 841(a)(1) and 841(b)(1)(C).

4.  <u>Count 4</u> charges on October 6, 1987, George Rivera, Ward Johnson and Arycelis Turino did distribute approximately 20 grams of heroin in violation of 21 USC 812, 841(a)(1), 841(b)(1)(C) and 18 USC 2.

5.  <u>Count 5</u> charges on August 8, 1988, George Rivera and Ward Johnson did possess with intent to distribute more than 100 grams of a Schedule I controlled substance, namely, approximately 675 grams of heroin in violation of 21 USC 812, 841(a)(1), 841(b)(1)(B) and 18 USC 2.



RIVERA, GEORGE

-3-

83499-P. Richter

6. <u>Count 6</u> charges on January 5, 1989, George Rivera, Ward Johnson, Victor Briggs and Anthony Briggs, did distribute approximately 10 glassine envelopes of heroin in violation of 21 USC 812, 841(a)(1), 841(b)(1)(C) and 18 USC 2.

7. <u>Count 7</u> charges on January 10, 1989, George Rivera, Ward Johnson and Victor Briggs did distribute approximately 40 glassine envelopes of heroin in violation of 21 USC 812, 841(a)(1), 841(b)(1)(C) and 18 USC 2.

8. <u>Count 8</u> charges on February 8, 1989, George Rivera, Ward Johnson, Victor Briggs and Anthony Briggs did possess with intent to distribute more than 100 grams of a Schedule I controlled substance, namely, approximately 539 grams of heroin in violation of 21 USC 812, 841(a)(1), 841(b)(1)(B) and 18 USC 2.

9. <u>Count 9</u> charges on April 30, 1989, George Rivera, Ward Johnson, Luis Gautier, Ralph Hernandez and Jaime Cuevas, did possess with intent to distribute more than 100 grams of a Schedule I controlled substance, namely, approximately 521 grams of heroin in violation of 21 USC 812, 841(a)(1), 841(b)(1)(B) and 18 USC 2.

10. <u>Count 10</u> charges on April 30, 1989, George Rivera, Ward Johnson, Luis Gautier and Ralph Hernandez did possess with intent to distribute more than 100 grams of a Schedule I controlled substance, namely, approximately 471 grams of heroin in violation of 21 USC 812, 841(a)(1), 841(b)(1)(B) and 18 USC 2.

11. <u>Count 11</u> charges on May 1, 1989, George Rivera, Ward Johnson, Walter David Cook, Luis Gautier, Ralph Hernandez, Albert Delmoral, Andrew Simmons, Ruben Rodriguez, John Marrero Raymond Marrero, Vicki Dowdy, Madeline Rodriguez, Mark Sanchez, Edgardo Delmoral, Anthony Garay and Veronica Aviles did possess with intent to distribute more than one kilogram of a Schedule I controlled substance, namely, approximately 1.1 kilograms of heroin in violation of 21 USC 812, 841(a)(1), 841(b)(1)(A) and 18 USC 2.

12. <u>Count 12</u> charges on April 29, 1989 to June 6, 1989, George Rivera, Ward Johnson and Walter David Cook did possess with intent to distribute more than one kilogram of a Schedule I controlled substance, namely, approximately 10.46 kilograms of heroin in violation of 21 USC 812, 841(a)(1), 841(b)(1)(A) and 18 USC 2.



RIVERA, GEORGE                                    83499-F. Richter

-4-

13.  **Counts 13 - 20** charge on or about the dates set forth below,
     the defendants unlawfully and knowingly and in relation to
     drug trafficking crimes, namely, the conspiracy to distribute
     in excess of one kilogram of a detectable amount of heroin,
     did use and carry firearms in violation of 18 USC 924(c) and
     2, as set forth below:

| COUNT | DEFENDANT(S) | DATE | FIREARMS(S) |
|---|---|---|---|
| 13 | GEORGE RIVERA<br>WARD JOHNSON<br>WALTER DAVID COOK<br>LUIS GAUTIER<br>RALPH HERNANDEZ<br>ALBERT DELMORAL<br>ANDREW SIMMONS<br>RUBEN RODRIGUEZ<br>JOHN MARRERO<br>RAYMOND MARRERO<br>VICKI DOWDY<br>MADELINE RODRIGUEZ<br>MARK SANCHEZ<br>EDGARDO DELMORAL<br>ANTHONY GARAY<br>VERONICA AVILES | 5/1/89 | a loaded MP-9<br>.9 mm machine<br>pistol;<br>a loaded .20 gauge<br>pump shotgun;<br>a loaded .12 gauge<br>semi-automatic<br>shotgun;<br>a loaded .38<br>caliber handgun;<br>and a loaded .357<br>Magnum handgun |
| 14 | GEORGE RIVERA<br>WARD JOHNSON<br>WALTER DAVID COOK<br>LUIS GAUTIER<br>RALPH HERNANDEZ<br>ANDREW SIMMONS | 5/1/89 | a loaded .357<br>Magnum handgun |
| 15 | GEORGE RIVERA<br>VICTOR BRIGGS | 2/8/89 | a loaded .22<br>caliber revolver |
| 16 | GEORGE RIVERA<br>VICTOR BRIGGS | 2/8/89 | a loaded .357<br>Magnum handgun |
| 17 | GEORGE RIVERA<br>VICTOR BRIGGS | 2/8/89 | a .357 Magnum<br>handgun |
| 18 | GEORGE RIVERA<br>VICTOR BRIGGS | 2/8/89 | a .38 caliber<br>handgun |
| 19 | GEORGE RIVERA | on or<br>before<br>5/1/89 | a loaded .380<br>caliber Baretta<br>pistol |

 

RIVERA, GEORGE

-5-

83499-P. Richter

20        GEORGE RIVERA        on or        a loaded .380
                               before       caliber Browning
                               5/1/89       handgun

14. One count Information SSS 89 CR 346(SWK) charges on April 15, 1989, Ward Johnson, did attempt to evade income tax due and owing by him to the United States of America for the 1988 calendar year by failing to report as taxable income approximately $491,550 in cash earned by him in violation of 26 USC 7201.

15. One count Information SSSS 89 CR 346(SWK) charges from January 1, 1989 to May 16, 1989, Kenroy Prentice did distribute and possess with intent to distribute more than 100 grams of a detectable amount of Schedule I controlled substance, namely, heroin in violation of 21 USC 812, 841(a)(1), 841(b)(1)(B) and 18 USC 2.

16. One count Information SSSSS 89 CR 346(SWK) charges from January 1, 1986 to August, 1989, Marshall Harrison did distribute and possessed with intent to distribute more than 100 grams of a detectable amount of a Schedule I controlled substance, namely, heroin in violation of 21 USC 812, 841[a][1], 841[b][1][B] and 18 USC 2.

17. Count 1 of 89 CR 346(S6) (SWK), as redacted, filed in the Southern District of New York on June 7, 1990, charges from April, 1987 up to June 7, 1990, George Rivera, a/k/a "Boy George", Anthony Cruz, Denny Delgado, Dennis Lynch, Arycelis Turino, a/k/a "Chela" and Ketty Turino, and other co-conspirators known and unknown to the Grand Jury, conspired together to violate narcotic laws of the U.S., specifically, 21 USC 812, 841(a)(1) and 841(b)(1)(A) in violation of 21 USC 846.

18. Count 2 charges from April, 1987 to June 7, 1990, George Rivera did engage in a continuing criminal enterprise in that he unlawfully and knowingly violated 21 USC 812, 841(a)(1), 841(b)(1)(A) - (C) & 846, all of which were part of a continuous series of violations of said statutes undertaken by the defendant in concert with at least five other persons with respect to whom he occupied a position of organizer, supervisor and manager and from which continuing series of violations the defendant obtained substantial income and resources in violation of 21 USC 848(a) and (b).

19. Count 3 charges on August 27, 1989, George Rivera distributed approximately 56 grams of heroin in violation of 21 USC 812, 841(a)(1) and 841(b)(1)(C).

 

RIVERA, GEORGE

-6-                                          83499-P. Richter

20.  Count 4 charges on October 6, 1987, George Rivera and Arycelis Turino did distribute approximately 20 grams of heroin in violation of 21 USC 812, 841(a)(1) and 841(b)(1)(C).

21.  Count 5 charges on February 8, 1989, George Rivera possessed with intent to distribute approximately 539 grams of heroin in violation of 21 USC 812, 841(a)(1), and 841(b)(1)(B).

22.  Count 6 charges on April 30, 1989, George Rivera possessed with intent to distribute approximately 521 grams of heroin in violation of 21 USC 812, 841(a)(1), and 841(b)(1)(B).

23.  Count 7 charges on April 30, 1989, George Rivera possessed with intent to distribute approximately 471 grams of heroin in violation of 21 USC 812, 841(a)(1), and 841(b)(1)(B).

24.  Count 8 charges on May 1, 1989, George Rivera and co-conspirator Walter David Cook, possessed with intent to distribute approximately 1.1 kilograms of heroin in violation of 21 USC 812, 841(a)(1) and 841(b)(1)(A).

25.  Count 9 charges from April 29, 1989 to June 6, 1989, George Rivera and co-conspirator Walter David Cook possessed with intent to distribute approximately 10.46 kilograms of heroin in violation of 21 USC 812, 841(a)(1) and 841(b)(1)(A).

26.  Count 10 charges on May 1, 1989, George Rivera, did use and carry a loaded MP-9.9 mm machine pistol; a loaded .20 gauge pump shotgun; a loaded .12 gauge semi-automatic shotgun; a loaded .38 caliber handgun and a loaded .357 magnum handgun during and in relation to a drug trafficking crime in violation of 18 USC 924(c).

27.  Count 11 charges on September 2, 1987, George Rivera did use and carry a Mossberg shotgun during and in relation to a drug trafficking crime in violation of 18 USC 924(c).

28.  Count 12 charges on or before May 1, 1989, George Rivera did use and carry a loaded Smith & Wesson .44 magnum handgun and a loaded. 380 caliber Browning handgun during and in relation to a drug trafficking crime in violation of 18 USC 924(c).

29.  Count 13, charges on or before May 1, 1989, George Rivera did use and carry a loaded .380 Baretta pistol during and in relation to a drug trafficking crime in violation of 18 USC 924(c).



RIVERA, GEORGE

-7-

83499-P. Richter

30. Count 14 charges in the calendar year 1988, George Rivera, had and received substantial taxable income upon which there was due and owing to the U.S. of America substantial income tax and knowingly and willfully attempted to evade and defeat said income tax by failing to file federal income tax returns, by failing to pay the Internal Revenue Service said income tax and by concealing and attempting to conceal his true and correct taxable income in violation of 26 USC 7201.

31. On October 3, 1989, a fugitive warrant was issued for Bob Lemon.

32. Jaime Cuevas pled guilty to Ct. 1 of SS89 CR 346 (SWK) and on March 30, 1989, was sentenced to 165 months custody of the Bureau of Prisons to be followed by five years supervised release. Also imposed was a $5,000 fine, and a $50 special assessment.

33. Ruben Rodriguez pled guilty to the lesser included offense of Count 1 and Count 13 of SS 89 CR 346(SWK) and on May 2, 1990, was sentenced to 63 months and 60 months, respectively and consecutively, custody of the Bureau of Prisons to be followed by four years supervised release. Also imposed was a $100 special assessment.

34. Desiree Sidberry pled guilty to the lesser included offense of Count 1 of SS 89 CR 346(SWK) and on May 2, 1990, was sentenced to 63 months custody of the Bureau of Prisons to be followed by four years supervised release. Also imposed was a $50 special assessment.

35. Willie Claussen pled guilty to Count 1 of SS 89 CR 346(SWK) and on June 20, 1990, was sentenced to 210 months custody of the Bureau of Prisons to be followed by five years supervised release. Also imposed was a $50 special assessment.

36. John and Raymond Marrero pled guilty to the lesser included offense of Count 1 and Count 13 of SS 89 CR 346(SWK) and on July 25, 1990, John Marrero was sentenced to 63 months custody of the Bureau of Prisons on Count 1 and five years on Count 13, consecutively, to be followed by four years supervised release. Also imposed was a $50 special assessment. On July 25, 1990, Raymond Marrero was sentenced to 78 months custody of the Bureau of Prisons on Count 1 and five years on Count 13, consecutively, to be followed by four years supervised release. Also imposed was a $50 special assessment.

 

RIVERA, GEORGE                                      83499-P. Richter
                          -8-

37.  Jonathan Lane Morris, Jr. pled guilty to Count 1 of SS 89 CR
     346(SWK) and on July 11, 1990 was sentenced to 135 months
     custody of the Bureau of Prisons to be followed by five years
     supervised release.    Also imposed was a $50 special
     assessment.

38.  Anthony Briggs pled guilty to Count 8 of SS 89 CR 346(SWK) and
     on July 11, 1990 was sentenced to 63 months custody of the
     Bureau of Prisons to be followed by four years supervised
     release.  Also imposed was a $50 special assessment.

39.  Ward Johnson pled to guilty to Counts 1, 12 and 13 of SS 89
     CR 346(SWK) and one count Information SSS 89 CR 346(SWK) on
     February 2, 1990 and is awaiting sentence.

40.  Luis Gautier pled guilty to Counts 1, 12 and 13 of SS 89 CR
     346(SWK) on January 30, 1990 and is awaiting sentence.

41.  Ralph Hernandez pled guilty to Counts 1, 12 and 13 of SS 89
     CR 346(SWK) on February 6, 1990 and is awaiting sentence.

42.  Kenroy Prentice pled guilty to Count 1 of SS 89 CR 346(SWK)
     and one count Information SSSS 89 CR 346(SWK) on January 29,
     1990.  No sentencing date has been scheduled.

43.  Albert Delmoral pled guilty to Counts 1 and 13 of SS 89
     346(SWK) on February 5, 1990 and is awaiting sentence.

44.  Vicki Dowdy pled guilty to the lesser included offense of
     Count 1 and Count 13 of SS 89 CR 346(SWK) on February 7, 1990
     and is awaiting sentence.

45.  Mark Sanchez pled guilty to the lesser included offense of
     Count 1 and Count 13 of SS 89 CR 346(SWK) on February 2, 1990
     and is awaiting sentence.

46.  Edgardo Delmoral pled guilty to the lesser included offense
     of Count 1 and Count 13 of SS 89 CR 346(SWK) on February 6,
     1990 and is scheduled for sentencing on December 19, 1990.

47.  Anthony Garay pled guilty to the lesser included offense of
     Count 1 and Count 13 of SS 89 CR 346(SWK) on January 26, 1990
     and is scheduled for sentencing on December 19, 1990.

48.  Marshall Harrison pled guilty to Count 1 of SS 89 CR 346(SWK)
     and one count Information SSSSS 89 CR 346(SWK) on April 16,
     1990 and is awaiting sentence.

49.  Andrew Simmons pled guilty to the lesser included offense of

RIVERA, GEORGE                                              83499-P. Richter

-9-

Count 1 and Count 14 of SS 89 CR 346(SWK) on May 11, 1990 and sentencing is scheduled for December 21, 1990.

50. Madeline Rodriguez pled guilty to the lesser included offense of Count 1 and Count 13 of SS 89 CR 346(SWK) on May 23, 1990 and sentencing is scheduled for January 16, 1991.

51. Veronica Aviles pled guilty to the lesser included offense of Count 1 and Count 13 of SS 89 CR 346(SWK) on June 27, 1990 and is awaiting sentence.

52. Matthew Williams pled guilty to the lesser included offense of Count 1 of SS 89 CR 346(SWK) on August 22, 1990 and sentencing is scheduled for January 9, 1991.

53. Michael Cole pled guilty to the lesser included offense of Count 1 of SS 89 CR 346(SWK) on August 27, 1990 and sentencing is scheduled for January 9, 1991.

54. George Rivera was found guilty of Counts 1 and 14 of Indictment 89 CR 346(S6) (SWK) by jury verdict on November 16, 1990. There was no jury decision on Counts 2 thru 13. Sentencing is scheduled for February 27, 1991.

55. Anthony Cruz, Danny Delgado, Arycelis Turino and Ketty Turino were found guilty of Count 1 of Indictment 89 CR 346(S6) (SWK) by jury verdict on November 16, 1990. Arycelis Turino was found not guilty of Count 4. These defendants are scheduled to be sentenced on February 6, 1991.

56. There was no jury decision regarding Dennis Lynch.

57. Charges against Walter David Cook remain pending.

<u>The Offense Conduct</u>

58. From approximately April, 1987 through May, 1989, one organization was a primary source of heroin in the Bronx, New York. The conspiracy in which this organization's members participated took the form of a highly structured business organization with members performing different functions and operating at different levels of responsibility, and with some members performing different functions at different times.

59. In April and May, 1989, after a nearly two-year investigation by the New York Drug Enforcement Task Force, the authorities arrested key members of the organization and seized assets that had been purchased with the proceeds of narcotics

RIVERA, GEORGE

-10-

83499-P. Richter

trafficking. Ultimately, 33 individuals were indicted for their activities, although charges against two of the defendants were eventually dismissed.

60. The organization was controlled by George Rivera, who developed the organization to sell heroin under various brand names, including its primary brand, "Obsession." The organization also distributed heroin under the brand names "Delirious," "Hammer," "Sledge Hammer," and "Candy Land." Rivera was responsible for obtaining heroin from suppliers; establishing sale locations and hiring the managers of such locations; and providing firearms and other protection for the sale locations.

61. As early as the fall of 1987, Rivera's organization sold substantial quantities of heroin. For example, on August 27, 1987, an undercover agent was introduced to George Rivera at the Baychester Diner in the Bronx. At the meeting, Rivera gave the undercover two ounces of heroin in exchange for $12,000. The substance contained 56 grams of 88% pure heroin. At that time Rivera told the undercover his organization distributed approximately 2 kilograms of heroin and grossed approximately one-quarter of a million dollars per week. Rivera also stated that he generally dealt in dime-bags rather than "weight" (larger quantities of heroin) because it was more profitable. On October 6, 1987, the same undercover purchased 12 bundles of glassine envelopes (20 grams), each stamped with "Delirious," wrapped in newspaper for $5,000.

62. Generally, Rivera purchased several 700-gram "units" of Southeast Asian heroin from Chinese suppliers and had Ward Johnson store it for him and deliver it to the "cutting mills" as needed. Throughout the course of the conspiracy, the organization had several "cutting mills" to which the relatively pure heroin was delivered and then "cut" or diluted and packaged in "dime bags" -- ten-dollar glassine envelopes. The individual glassine envelopes, which were pre-stamped with the brand name, were filled, taped shut and then packaged in "bundles" of ten at the cutting mills. These bundles were further wrapped in newspaper into rectangular packages called "bricks." Each brick contained approximately 800 individual glassine envelopes. After packaging, the bricks were retrieved by lieutenants, who delivered them to the managers of various street locations.

63. The principal street level distribution outlets (the "stores" as they were known as by members of the organization) were located at (i) 153rd - 156th Streets and Courtland Avenue,



RIVERA, GEORGE

-11-

83499-P. Richter

(ii) 651 Southern Boulevard, (iii) 139th Street and Brook Avenue, (iv) 122nd Street and Second Avenue, and (v) 166th Street and Washington Avenue.

64. The managers received the heroin and were responsible for selling it on the street. The managers would keep a percentage of the proceeds (from ten to twenty percent depending on the location) and remit the remainder to George Rivera, either directly or through the lieutenants.

65. Generally, each of the managers of the street locations maintained a "stash" at which they stored their heroin and as needed, retrieved the heroin for distribution. On the street, transactions with buyers were conducted by "pitchers" or dealers who are assisted by "lookouts," "steerers," and "escorts" -- persons who were often armed and assigned to protect dealers. The managers were responsible for recruiting and paying their individual sales organizations.

66. During late 1988 or early 1989, Rivera entrusted Walter David Cook to supervise a portion of the heroin organization operating under the brand name "Sledge Hammer." "Sledge Hammer" was produced from the same heroin as "Obsession," was packaged at the same cutting mills and distributed through "Obsession" outlets.

67. Ward Johnson assisted Rivera in the day-to-day management of the organization. Among the matters on which Johnson consulted and assisted Rivera were matters relating to the obtaining of heroin from suppliers, the operation of the organization's heroin processing "mills," the receipt of heroin proceeds and the keeping of the organization's records of production and sales.

68. Other key members of the organization included Matthew Williams, Luis Gautier, Ralph Hernandez, Jaime Cuevas, and Jonathan Lane Morris, Jr., who picked up heroin from the heroin processing "mills," delivered it to street-level distribution managers and collected proceeds of the organization's heroin trafficking.

69. The managers of the various street distribution locations changed from time to time as some were fired or arrested. At times certain locations were also co-managed by more than one person. Among the managers of the various locations were Danny Delgado and Anthony Rivera (153rd Street and Courtland Avenue); Victor Briggs and Anthony Briggs (651 Southern Boulevard); Willie Claussen and Kenroy Prentice (139th Street

RIVERA, GEORGE

~12~                                                83499-P. Richter

and Brook Avenue); Bob Lemon and Michael Cole (122nd Street and Second Avenue); Marshall Harrison, and Dennis Lynch (166th Street and Washington Avenue).

70. Certain members of the organization, among them Albert Delmoral, Arycelis Turino, Desiree Sidberry, Ketty Turino, Andrew Simmons, Ruben Rodriguez, John Marrero, Ray Marrero, Vicki Dowdy, Madeline Rodriguez, Mark Sanchez, Edgardo Delmoral, Anthony Garay and Veronica Aviles, worked in the heroin processing "mills" packaging heroin for distribution on the retail level. Matthew Williams and Albert Delmoral, at times supervised the heroin processing "mills."

71. By late 1988, the organization had grown to over fifty participants, including the members of the individual street locations. On December 24, 1988, George Rivera hosted a Christmas Eve party for his heroin distribution organization; the party was held on board a yacht, which cruised around Manhattan, New York. Rivera rented tuxedos for the entire organization, and provided live music at the party. In addition, at the party, Rivera gave, among other things, a gold Rolex watch to Ward Johnson and a Model 750 BMW automobile to Walter David Cook. Rivera also gave diamond-inscribed solid gold belt buckles to Victor Briggs, Kenroy Claussen, Willie Prentice, (which were subsequently seized and appraised at $7,000 - $7,500 each) and Bob Lemon, among others, as rewards for their service.

72. During the course of the investigation, substantial amounts of heroin, firearms, cash and jewelry were seized, both by agents investigating this case and by officers of the New York City Police Department who from time to time arrested members of the organization.

73. Included among these seizures were, on August 8, 1988, Matthew Williams was arrested carrying approximately one and one-half pounds of heroin (675 grams) and approximately $22,000 in cash in the vicinity of Aqueduct and Jerome Avenues, Bronx, New York. On August 22, 1988, Walter David Cook, and another person had approximately $24,000 in cash in a Mercedes Benz automobile in the Bronx, New York. On January 9, 1989, officers of the New York Police Department made an arrest in Apartment 2A of 498 East 139th Street, Bronx, New York, a "stash" for the 139th Street and Brook Avenue "store." At the time the officers seized approximately 1,385 glassine envelopes of heroin (approximately 89 grams) stamped with "Obsession," approximately $31,000 in cash and a firearm from the apartment.




RIVERA, GEORGE

-13-

83499-P. Richter

74. In addition, there were numerous arrests and seizures involving the 651 Southern Boulevard "store." On September 20, 1988, the NYDETF executed a search warrant at Apartment 2D, 651 Southern Boulevard, Bronx, New York. They recovered from a box in the closet of the apartment 100 glassine envelopes containing heroin (5.5 grams), each of which was stamped with the term "Obsession," and approximately $4,400 in cash. On November 8, 1988, the NYDETF observed people selling heroin in front of 651 Southern Boulevard. Upon the seller's arrest, the NYDETF recovered approximately 400 glassines of "Obsession" heroin (22 grams) from that person. On January 5, 1989, Anthony Briggs, was a steerer in a 10 glassine bag (.9 grams) sale to an undercover at 651 Southern Boulevard. On January 10, 1989, the same undercover bought 40 glassines (2.6 grams) from Victor Briggs at 651 Southern Boulevard.

75. Acting on this and other information, on February 8, 1989, NYDETF agents conducted surveillance in the vicinity of 651 Southern Boulevard, Bronx, New York prior to executing narcotics-related search warrants for four apartments in the building. During the surveillance, agents observed Anthony Briggs attempt to hand a brown paper bag which he was carrying to Victor Briggs. After they were arrested, the NYDETF agents recovered approximately $10,000 from the bag that Anthony Briggs attempted to give to Victor Briggs. In addition, pursuant to a search warrant, the NYDETF agents recovered the following items from Apartment 1C at 651 Southern Boulevard: a loaded .22 caliber revolver, a loaded .357 magnum revolver, a .38 caliber revolver and another .357 magnum from inside a safe and numerous narcotics records and paraphernalia in the apartment. That same day, the agents searched 730 East 165th Street, Apartment 12D, a known "stash" of Victor and Anthony Briggs for heroin and cash, and recovered approximately $50,000 in cash in a plastic bag and approximately 5600 glassines containing heroin (539 grams).

76. By April, 1989, the group's leaders, key members, stash locations and methods of operation had been identified. On April 30, 1989, NYDETF agents established surveillance of 740 East 243rd Street, Bronx, New York, which at that time was used as the organization's cutting mill. Ward Johnson was observed entering the building. Later that day, Luis Gautier and Ralph Hernandez were observed exiting the building, each carrying a full white plastic bag. They entered a livery service automobile, driven by Jaime Cuevas, and drove off. Eventually, Gautier and Hernandez left the car and Cuevas was arrested removing approximately 13 "bricks" from the trunk of his car. Each "brick" contained approximately 800 glassines

 

RIVERA, GEORGE

-14-

83499-P. Richter

of heroin, for a total of approximately 10,400 (521 grams). The glassines and the bricks were stamped with the word "Obsession."

77. Later on April 30, 1989, Gautier and Hernandez again arrived and entered the building located at 740 East 243rd Street. A short time later, Gautier and Hernandez left the building, carrying another white plastic bag. Shortly thereafter, they were arrested and the bag was recovered. The white plastic bag was later found to contain approximately 11 "bricks" each containing approximately 800 glassines of "Obsession" brand heroin, for a total of approximately 8800 bags of heroin (471 grams).

78. At approximately 2:35 a.m. on May 1, 1989, members of the Task Force executed a telephone search warrant at Apartment 3F, 740 E. 243rd Street. At the time, the agents arrested the following "mill workers" inside the mill: Albert Delmoral, Andrew Simmons, Ruben Rodriguez, John Marrero, Ray Marrero, Vicki Dowdy, Madeline Rodriguez, Mark Sanchez, Edgardo Delmoral, Anthony Garay and Veronica Aviles.

79. Agents searching Apartment 3F found, among other things, the following: approximately 1096 grams of heroin in the form of loose powder; blocks of mannite, a substance used to cut and dilute heroin; approximately eight large boxes containing hundreds of thousands of empty glassine envelopes stamped with the names "Obsession," "Sledgehammer," and "Delirious;" approximately five grinding machines used for reducing heroin to powder; numerous strainers; numerous boxes of adhesive tape of type used to seal glassines after being filled with heroin; facial dust masks used by "cutters" to protect themselves from heroin dust; three triple-beam scales; empty packaging of a type used to package kilo quantities of heroin; and square sheets of newspaper cut to a size to wrap "bricks" of glassine envelopes. Agents also discovered a notebook including, among other things, a list of names, with figures that appeared to be amounts owed, and notations that certain of the named persons had been "late." Also in the apartment, agents found two .38 caliber loaded handguns, a loaded 20-gauge pump shotgun, an automatic shotgun containing eight rounds, and a loaded .9 mm MP9 automatic rifle.

80. In addition, at the time of the search one of the persons inside the apartment, Andrew Simmons, was observed throwing a handgun from a window of the apartment. Another agent retrieved the weapon and determined it to be a loaded .357 magnum. The agents also recovered approximately 50 grams of heroin from a purse belonging to Veronica Aviles.

RIVERA, GEORGE

-15-                                    83499-P. Richter

81. Numerous other search warrants were executed and members of the organization were arrested in May, 1989. Law enforcement agents seized jewelry, valued in excess of $75,000 from George Rivera, Ward Johnson, Luis Gautier, Ralph Hernandez, Willie Claussen and Kenroy Prentice, that were purchased with the proceeds of the heroin organization. In addition, numerous automobiles were seized from the organization which were also purchased with the proceeds of heroin trafficking. Among them were: a 1987 Mercedes Benz 300E appraised at $27,600 from Ward Johnson; a 1979 Porche equipped with a television, video cassette recorder, compact disc player and mobile telephone appraised at $75,000 from George Rivera; a 1989 Porche appraised at $74,000 from George Rivera; a 1987 Mercedes Benz 560 SEL appraised at $41,500 from George Rivera; a 1987 Mercedes Benz 190E equipped with a color television, video cassette recorder, compact disc player, cellular telephone and numerous electronically controlled secret compartments, one of which contained a loaded handgun, from George Rivera; and two 1989 BMW 535i's appraised at $45,000 each from George Rivera.

82. Following these arrests, the agents recovered another 10.46 kilograms of 87% pure heroin that had been obtained by George Rivera to dilute and distribute. Rivera, however, was arrested before he was able to do so.

83. Pursuant to the search warrants executed in connection with the case, the agents also seized records of the organization for 1988 and 1989. These records show that a conservative estimate (because the records are incomplete) of the amount of heroin that was distributed by the organization in 1988 was approximately 900,000 glassine envelopes valued at approximately $9,000,000. Based on the records, the estimated weight of the heroin distributed in 1988 was 54 kilograms. The records for 1989 (from January to April 30, 1989) show sales of approximately 436,000 glassines or $4,366,350 worth of heroin. The estimated weight of this heroin, based on the approximate weights in the records, is 28 kilograms.

84. On advice of counsel the defendant made no statements regarding the offense.

## Adjustment for Obstruction of Justice

85. On December 12, 1989, New York City Police Officers detained and questioned Angel Marquez in the vicinity of 103rd Street

RIVERA, GEORGE

-16-                          83499-P. Richter

and Cortlandt Avenue in the Bronx in connection with drug
trafficking. At that time, Marquez consented to a search of
his person which revealed a beeper, $1,000 in cash and a copy
of the first page of Indictment SS89 CR 346, which contained
handwritten notations. When asked about the notations on the
Indictment, Marquez responded that "we are doing VooDoo on
them".

86. Among the notations on the Indictment were "X''s" next to
every defendant in the case except George Rivera. Below the
names was a key, revealing that the "X" meant to "quiet their
mouths". Moreover, one of the defendants names, Ward Johnson,
was circled, and had three "X's" next to his name as well as
"I want him quiet and I want him to pay for all he has done"
next to his name. Underneath all the defendants names,
another name was handwritten on the Indictment, with five
"X's" next to it. There was also "I want him more than
anything" next to that person's name. The copy of the
Indictment also contained the handwritten names of Judge
Shirley Wohl Kram and Government Prosecutors Henry DePippo and
Pat Fitzgerald with a handwritten notation to "also work on".

87. In regard to the above, expert handwriting analysis was
conducted on a handwriting exemplar submitted by the
defendant. Said analysis was inconclusive regarding the
handwritten notations on the indictment. However, said
analysis also indicated that the defendant tried to disguise
his handwriting on the exemplar. The handwriting expert is
available to testify regarding the above.

88. Also, trial witnesses are available to testify that the
defendant initially tried to induce them not to testify by
offering them money and subsequently, threatening them as well
as their families.

<u>Adjustment for Acceptance of Responsibility</u>

89. The defendant did not admit to his participation in the
instant offense or acknowledge responsibility for his actions.

RIVERA, GEORGE

-17-

83499-P. Richter

### Offense Level Computation

90. The Pre-November 1, 1989 Sentencing Guidelines were utilized in selecting the sentence ranges in accordance with the Supreme Court's Ex-Post Facto Decision Miller v. Florida, 482 USC 432 (1987).

91. Base Offense Level: Because Count 14 has a different victim (different societal interest) and constitutes a different harm (financial loss v. drug availability) than Count 1, Count 14 is treated as separate group.

### Count 1:

92. Base Offense Level:  Violations of 21 USC 846 are covered by 2D1.4, which states that the offense level "shall be the same as if the object of the conspiracy had been completed".

93. The object of the conspiracy related to the distribution of heroin for which the offense level is determined by the Drug Quantity Table and is found at 2D1.1(a)(3).  The amount of heroin distributed in 1988 was approximately 54 kilograms and in 1989, 28 kilograms for a total of 82 kilograms heroin which is rated at a offense level of 36 as the total exceeds 10 kilograms of heroin.                          <u>36</u>

94. Specific Offense Characteristics:  As indicated in the offense conduct description, numerous weapons procured by the defendant as established by trial testimony, seized during the arrest, were used during the commission of the offense, and found in two of the cars seized from the defendant were three loaded weapons.  Therefore, pursuant to 2D1.1(b)(1), the offense level is increased two levels.  <u>+2</u>

95. Adjustment for Role in the Offense:  The trial testimony clearly indicates that the defendant's leadership involvement in the drug trafficking operation netted him enormous profits from the distribution of approximately 82 kilograms of heroin and said operation had more than five individuals, some of whom received directions from the defendant.   Therefore, pursuant to 3B1.1(a), the offense level is increased 4 levels.                          <u>+4</u>

96. Victim Related Adjustments:  None.                     <u>0</u>

97. Adjustment for Obstruction of Justice:  It is clear that the defendant wilfully attempted to impede and obstruct

 

RIVERA, GEORGE                                         83499-P. Richter
                              -18-

administration of justice by threatening not only the
individuals who testified against him but also the
presiding trial Judge and prosecuting attorneys.
Therefore, pursuant to 3C1.1, the offense level is
increased 2 levels.                                                    +2

98. Adjusted Offense Level Count 1 (Subtotal):                          44

   Count 14: Attempted Tax Evasion

99. Base Offense Level: Violations of 26 USC 7201 are covered
    by 2T1.1. According to the trial testimony, the defendant
    had taxable income of approximately $4,491,410 in 1988.
    Pursuant to 2T1.1(a), the base offense level is determined
    by 2T4.1 (Tax Table) corresponding to the tax loss. The
    tax owed on said amount is $1,264,000 per Internal Revenue
    Service calculations. Therefore, pursuant to 2T4.1(K), the
    base offense level is 16.                                           16

100. Specific Offense Characteristics: Pursuant to
     2T1.1(b)(1)(A), since the defendant received more than
     $10,000 dollars income from criminal activity, he is
     subject a 2 level increase.                                        2

101. Adjustment for Role in the Offense: None.                          0

102. Victim Related Adjustments: None.                                  0

103. Adjustment for Obstruction of Justice: None.                       0

104. Adjusted Offense Level Count 14 (Subtotal):                        18

     Multiple Count Adjustment                          Units
     Count 1 - Adjusted Offense Level  44 ......  1
     Count 14 - Adjusted Offense Level 18 ......  0
     Total Number of Units                        1
     Greater of the Adjusted Offense Levels Above 44
     Increase in Offense Level (3D1.4)            0
     Combined Adjusted Offense Level              44                    44

105. Adjustment for Acceptance of Responsibility: As the
     defendant made no statements regarding the admission of or
     accepting responsibility for the offense conduct, no
     reduction in the base offense level is warranted under
     3E1.1.                                                             0

106. Total Offense Level:                                               44

RIVERA, GEORGE

-19-                                    83499-P. Richter

## PART B.   THE DEFENDANT'S CRIMINAL HISTORY

### Juvenile Adjudication(s)

107. None.

### Adult Criminal Conviction(s)

108. None.

### Criminal History Computation

109. The total of the criminal history points is zero.  According to the sentencing table (Chapter 5, Part A), zero to one criminal history points establishes a criminal history category of I.

### Other Criminal Conduct

110. None known.

### Pending Charges

111. On August 20, 1986, the defendant was arrested in Mt. Vernon, New York and charged with Criminal Possession Weapon Bomb/Silencer.  On September 26, 1986, the case was returned to the City Court of Mt. Vernon, Dkt. #86-2142.  On October 7, 1986, a Bench Warrant was issued and remains outstanding.

## PART C.   SENTENCING OPTIONS

### Custody

112. Statutory Provisions:  Count 1 - 10 year mandatory up to life (21 USC 846).

113. Count 14 - Up to 5 years (26 USC 7201).

114. Guideline Provisions:  Based on an offense level of 44 (the Sentencing Table is capped at level 43) and a criminal history category of I, the guideline imprisonment range is life.

### Supervised Release

115. Statutory Provisions:  Count 1 - 5 years minimum to follow any period of custody (21 USC 846).

RIVERA, GEORGE                                          83499-P. Richter

-20-

116. <u>Count 14</u> - There is no statutory requirement relating to supervised release for conviction under 26 USC 7201. However, pursuant to 18 USC 3583, the Court may impose up to 3 years supervised release to follow any period of custody.

117. Pursuant to 18 USC 3624(e), terms of supervised of release run concurrently.

118. Guideline Provisions: Pursuant to 5D3.2(a), the term of supervised release shall be 5 years, the minimum required by statute.

<u>Probation</u>

119. Statutory Provisions: As Count 1 requires a mandatory minimum term of incarceration, probation is precluded. Pursuant to 18 USC 3561(a)(3), the defendant is ineligible for probation on Count 14 if custody is imposed on any other count.

120. Guideline Provisions: As probation is precluded by statute, probation is not permitted pursuant to the guidelines.

PART D.  OFFENDER CHARACTERISTICS

<u>Family Ties, Family Responsibilities, and Community Ties</u>

121. The defendant, true name Jorge Luis Rivera, Jr., born in the Bronx on January 10, 1968, is the only child produced from the consensual union between Jorge Luis Rivera, Sr. and Muncirette Lamberty. The defendant has one half sibling, Martin Acosta, age 21.

122. The father, age 46, is employed with a car service located in Queens and the mother, age 39, is a nurse at Mount Sinai Hospital.

123. According to the defendant, he and his mother did not get along very well as he believed that he was not getting the "right attention". At the approximate age of 12, as a result of a PINS petition, the defendant and his mother agreed that he should leave the home. He reportedly lived at the Pleasantville Cottage Home for approximately 90 days and from the age of 13 to 16, lived at the Saint Cabrini Group Home located in New Rochelle, New York.

RIVERA, GEORGE                                            83499-P. Richter
                              -21-

124. The defendant related that prior to leaving the home, his
     mother had "beat him" occasionally, sometime using an
     extension cord. He related that currently, he and his mother
     get along and described their relationship as being like
     brother and sister.

125. He related that his relationship with his father has always
     been good and while in the group homes, had weekend contact
     with his father.

126. He stated that he was jealous of Martin as he was the "saint"
     and got away with everything. The defendant believes that in
     view of Martin's being a sickly child, he received the bulk
     of the positive attention.

127. The defendant has never married but has two sons from two
     consensual relationships. Lizette Marty, age 24, is the
     mother of Giovanni Rivera, age 4. According to the defendant,
     he and Lizette lived together for approximately two years and
     mutually separated. As, according to the defendant, Lizette
     "changed on me".

128. Lillian Soto, age 19, is the mother of Christopher Soto, age
     4. According to the defendant, he and Lillian never lived
     together.

129. The defendant related that he had occasional contact with his
     sons and also voluntarily financially supported both. The
     defendant was unable to provide exact residences of either
     Lizette or Lillian.

130. After numerous attempts, we spoke with the father who
     confirmed the above familial information. He also related
     that he knew the defendant was involved in some illegal
     activity as he had been told by someone but he was not aware
     of the extent of said activity. He stated that on at least
     two occasions, he tried to talk with his son about said
     activity but that his son's response was that he "not worry
     about it".

131. Mr. Rivera related that he has had three heart attacks and
     believes his health condition will worsen should the defendant
     be incarcerated for a lengthy period of time. He further
     related that should the defendant be released from
     confinement, he would be able to reside with him and his
     current wife.



RIVERA, GEORGE
83499-P. Richter

-22-

### Mental and Emotional Health

132. The defendant reported no problems of a mental or emotional nature and none were evident during the interview. However, he stated that while at the group homes, he had psychological evaluations completed and also participated in weekly counseling but said counseling was not due to any mental problems.

### Physical Condition, Including Drug Dependence & Alcohol Abuse

133. The defendant is a 5'6" tall male who weighs approximately 175 pounds. He has brown hair and brown eyes and reported having an outlined heart tattooed on his left breast bone and a dragon with "Boy George" tattooed on his right bicep.

134. He reported good overall physical health and is not currently under a doctors care nor taking prescribed medication.

135. The defendant reported using marijuana, cocaine and heroin only sporadically in his teens, prior to and after living in the group homes. He related that said drug usage stemmed from peer pressure and the problems he was having at home. He reported occasional beer usage on the weekends and stated he has never participated in drug/alcohol counseling nor does he believe he needs to.

### Educational and Vocational Skills

136. The defendant completed the 10th grade at Morris High School in the Bronx. According to records received by Pretrial Services, the defendant attended said school from February 6, 1984 to May 10, 1985 and left school to go to work. He was readmitted on September 10, 1985 and was officially discharged on December 15, 1986. His overall scholastic achievement and attendance was rated as poor.

137. The defendant stated that he dropped out of school as he planned to join the Navy SEALS. However, he got no further than the exam and physical due his arrest in 1986. He does not have his GED but plans to take to said exam during his incarceration.

138. The defendant reported having masonry, sheetrock and draftsman skills.

139. The defendant also reported having participated in amateur boxing from approximately January, 1989 until his arrest. He



RIVERA, GEORGE                                          83499-P. Richter
                              -23-

was affiliated with Gleason's Gym located in Brooklyn and
during his short span with said sport, won a boxing match with
the defending golden glove champion in the heavingweight
division.

## Employment Record

140. The defendant reported having worked for approximately one
month in 1986 at the Food Emporium on 32nd Street in Manhattan
as a stock boy earning approximately $3.35 an hour. He also
reported working at McDonald's located on 3rd Avenue for
approximately three months earning $3.35 an hour as a
cashier/cook.

141. In 1985, he reportedly was employed at the Zodiac Restaurant
at Neiman Marcus in White Plains for approximately five months
earning minimum wage and tips. He reportedly quit employ as
he was living in the Bronx and he had started selling jewelry
on a consignment basis. He related he would purchase the
jewelry from wholesalers and sell said jewelry on the street.
He also reported working occasionally with his father.

## PART E.  FINES AND RESTITUTION

### Statutory Provisions

142. Count 1 - $4,000,000 (21 USC 846)

143. Count 14 - $250,000 plus cost of prosecution (26 USC 7201)

144. A special monetary assessment of $50 is mandated on each count
pursuant to 18 USC 3013.

### Guideline Provisions

145. The fine range is from $25,000 (5E4.2(c)(1)(A)) to $4,250,000
(5E4.2(c)(4)(A)).

146. Subject to the defendant's ability to pay, the Court shall
impose an additional fine amount in the that is at least
sufficient to pay the costs to the Government of any
imprisonment, probation, or supervised release (Section
5E1.2(i)). The most recent advisory from the Administrative
Office of the U.S. Court suggests that a monthly cost of
$1,415.56 be used for imprisonment, a monthly cost of $96.66
for supervision, and a monthly cost of $957.27 for community
confinement.

 

RIVERA, GEORGE

83499-P. Richter

-24-

### Defendant's Ability to Pay

147. The defendant completed a financial statement indicating no assets and liabilities totalling approximately $40,000 (monies owed to Borel Jewelers for jewelry purchased on consignment).

148. Given the above, it would not appear the defendant would be able to pay a substantial fine.

PART F.   FACTORS THAT MAY WARRANT DEPARTURE

149. There are no apparent factors that may warrant departure.

Respectfully submitted,

EUNICE R. HOLT JONES
Chief U.S. Probation Officer

By _____
PENNY RICHTER
U.S. Probation Officer
Ext. 7-0232

PR:vn

Approved:

Mark Rosenthal for JEL 3/7/91
JOSEPH E. LOUGHRAN          DATE
Supervisor

 

RIVERA, GEORGE                                        83499-P. Richter

### ADDENDUM TO THE PRESENCE REPORT

The Probation Officer states that the Presentence Report, including any revisions thereof, has been disclosed to the defendant through his attorney, and to counsel for the Government on February 15, 1991 and that the content of the Addendum has been mailed to counsel on March 6, 1991 for the purpose of review and disclosure to the defendant. The Addendum fairly states any objections they have made.

### OBJECTIONS

### By the Government

The Government has no objections but clarifies that the numerous weapons used during a commission of the offense and seized at the time of arrest (Paragraph 94), were procured by the defendant as established by trial testimony. Said clarification has been noted in the revised report.

The Government also advises that prior to the defendant's arrest, in mid-April, 1989, he was surveiled leaving his home in possession of a 30/30 shotgun and discarding said weapon which was subsequently recovered. Also, as established by trial testimony, in September, 1987, while searching the defendant's home in connection with his pending Mt. Vernon weapons charge, Mt. Vernon Police Officers seized a sawed-off shotgun.

### By the Defendant

We have been advised that defense counsel has objections to the report but, to date, we have not received said objections.

Respectfully submitted,

EUNICE R. HOLT JONES
Chief U.S. Probation Officer

by _____
PENNY RICHTER
U.S. Probation Officer
Ext. 7-0232

PR:vn

Approved:

_Mark Rosenthal for_ JEL   3/7/91
JOSEPH E. LOUGHRAN    DATE
Supervisor